WILLIAM L. WHITNEY & others *vs.* LYMAN WILLARD.

A mortgagee of personal property, from whom, after a foreclosure of the mortgage and a sale of the property, the assignee in insolvency of the mortgagor has recovered its value by suit upon the ground that the mortgage was fraudulent, may maintain an action against the debtor on the mortgage debt.

Under the *St.* of 1844, *c.* 178, § 5, as under the previous insolvent laws, a certificate of discharge, obtained upon second proceedings in insolvency, is no bar to an action upon a debt which might have been proved under the first proceedings, and was not proved under the second proceedings.

ACTION OF CONTRACT on three promissory notes made in August 1850, and payable in October, November and December respectively. The case, which was pending in Middlesex, was submitted to the decision of the court, and argued at Boston in February 1859, upon these facts:

The notes were given by the defendant to the plaintiffs in payment for furniture sold by them to him, and were secured by mortgage of the furniture, duly recorded. Upon a failure to pay the first note, the plaintiffs foreclosed the mortgage and sold the furniture.

In September 1850 the defendant applied for the benefit of the insolvent laws, and his assignees in insolvency afterwards sued the plaintiffs and recovered judgment against them for the value of this furniture, as constituting part of the defendant's

estate, and they were compelled to satisfy that judgment. The defendant failed to obtain his discharge under said proceedings in insolvency.

In December 1853 the defendant again instituted proceedings in insolvency, and obtained a certificate of discharge in the ordinary form, by the assent in writing of three fourths of his creditors who had proved their debts.

The notes in suit were provable under each of the proceedings in insolvency, but were not proved under either.

*B. W. Whitney*, for the plaintiffs.

*B. F. Butler*, for the defendant.

SHAW, C. J. Action on several promissory notes made by the defendant, payable to the plaintiffs. The defence is placed on two grounds: first, payment in whole or in part by the proceeds of a chattel mortgage foreclosed, given to secure the same notes; second, a discharge in insolvency.

1. On the first ground of defence, the facts agreed are, that the defendant did give the plaintiffs a mortgage on a large amount of furniture, and that, some time after giving such notes and mortgage, the defendant went into insolvency, but obtained no discharge under it. The assignees brought an action against these plaintiffs, to recover the said furniture, on the ground that the mortgage was given as a preference, or otherwise in fraud of his creditors, and they recovered of the plaintiffs the full value of such property.

The court are of opinion that such mortgage did not operate to discharge or otherwise affect the notes, as between these parties. The general rule of law is, that when personal property is consigned or mortgaged, with a power in the consignee or mortgagee, in law or by force of the contract, to sell the mortgaged property if not redeemed, and apply the proceeds to the payment of the debt, it does not enure by way of actual payment, until the property is sold and the money realized, or the mortgage foreclosed and the mortgaged goods become the absolute property of the mortgagee. *Rice* v. *Catlin*, 14 Pick 221.

It follows, as a necessary legal consequence, that until it is thus realized in money, or foreclosed, it does not preclude the

holders from bringing an action on the personal contract, to which the mortgage was collateral.

Another consequence is, that if the right of the mortgagee is defeated by a title paramount, so that the mortgagee receives no benefit from it, no payment is made on account of the notes, nor is their efficacy impaired as between promisor and promisee. This of course is taken with the qualification, that the title under which it is claimed and recovered, is a good, valid, paramount title, and that the property is not given up through the fault or connivance of the promisees.

If it be said that the plaintiffs cannot set up this excuse for not applying the mortgaged goods, because, if the assignees recovered them, it was in consequence of the plaintiffs' own fraud, it may be said in return, that this answer not only comes with an ill grace, but also with no legal effect from this defendant. If it was defeated as being fraudulent against creditors, it was a fraud in which the defendant had his full share. The title of the creditors, represented by the assignees, was paramount, both to that of the defendant and to the plaintiffs', because both joined in the fraud to the injury of creditors. The mortgage was valid as between mortgagor and mortgagee. Besides, it actually went to the use of the defendant, by satisfying *pro tanto* his other creditors, who by law had a right so to obtain and apply it.

The mortgaged property having thus been taken away by a title paramount to both these parties, and without any default of the plaintiffs, other than one for which the defendant was equally and jointly responsible, we think the notes stand as valid contracts between the parties, as simple contract debts, in the same condition as if no collateral security had been given.

2. On the second ground, the court are of opinion that the discharge of the defendant, under a second proceeding in insolvency, is no bar to the plaintiffs' action. This debt existed at the time the first insolvency proceedings were commenced. They did not prove their debt, nor did the defendant obtain a certificate of discharge; perhaps, as the counsel for the defend-

ant suggests, in consequence of this very attempt of the parties to give and obtain an illegal preference.

Under the second proceeding in insolvency, the plaintiffs did not prove their debt. The case, we think, is clearly within the authority of *Gilbert* v. *Hebard*, 8 Met. 129. That case underwent great consideration ; and the principle on which it was decided was adopted as a necessary practical construction of the insolvent laws as a system.

It is suggested in the argument for the defendant here, that the case is distinguishable from *Gilbert* v. *Hebard*. But we perceive no difference in any particular which makes it applicable to this case. In that, the discharge was refused on application, and again refused on an appeal to this court. But it is immaterial how the insolvent failed to obtain his discharge ; the material fact is, that he did fail to obtain his discharge under the first insolvency. In that respect the cases are the same.

Again ; it is intimated that that case depended on the law as it stood before the *St.* of 1844, *c.* 178, § 5, which expressly contemplates a second, and even a third insolvency.

It is true that this act contemplates a second and third insolvency. But it does not direct how such a second insolvency shall be instituted, or what property it shall bind. It is therefore not repugnant to the principles stated in the case cited. That did not hold or imply that there might not be a second insolvency, but only that it must be founded upon a debt or debts contracted since the commencement of the former proceedings, and would be binding only upon property since acquired by the debtor, and in no respect affect the assets which passed to the assignees under the first insolvency, and in no way affect creditors under the first insolvency, unless they should come in and make themselves a party to such second insolvency proceedings.

When therefore the legislature speak of a second insolvency, without directing how it shall be instituted, or what property shall be affected by it, we presume they had in view a case where an insolvent has contracted new debts, and acquired property which did not exist and did not pass as assets under the

former assignment; and did not intend to affect rights previously vested. In this way two distinct proceedings in insolvency may exist against the same insolvent debtor; and such construction is put on the various provisions, constituting one entire system, because such construction is necessary to make the various provisions harmonize with each other, and secure the rights of all parties under them.

These principles were reaffirmed at the last March term in Suffolk, in a case not distinguishable in its circumstances from the present. *Gardner* v. *Way*, 8 Gray, 191 & seq.

*Judgment for the plaintiffs.*